Peter Sermon died seized in fee of a tract of land situate on Mattamuskeet Lake, in Hyde County, and the same descended to his heirs-at-law, of whom Reuben Berry, John Berry, Rachel Berry, and Levisa Berry were part, to whom, as representing a deceased parent, one undivided fourth part of the Sermon tract of land belonged. Such proceedings were had by the heirs of Sermon that partition of the descended land was made between them by the judgment of the County Court, in which one-fourth part of the whole tract was laid off and allotted as the share of the said Reuben, John, Rachel, and Levisa, together, and they entered into the said share or lot, containing sixty-six acres, as tenants with each other of that lot in fee. Being thus in possession the said Reuben, John, Rachel, and Levisa Berry, on 5 March, 1831, sold for the sum of $1,000, and conveyed jointly, by their deed of bargain and sale, to the defendant, Andrew Shanklin, the said lot, and one-fourth part of the said tract of land in fee simple, with general warranty. Thereupon the defendant took possession and placed a tenant on the land, who has exclusively occupied it ever since.
When the deed to the defendant was executed Levisa Berry, one of the bargainors, was an infant. She attained full age on 28 November, 1834, *Page 340 
and on 1 December, 1834, she, in consideration of $200, executed a deed of bargain and sale to Daniel Murray, for one undivided fourth part of the said lot of land, containing sixty-six acres, in fee. On 28 November, 1834, the defendant caused to be written on the back of the deed made to him and bearing date 5 March, 1831, an instrument in the following words, to wit: "I do acknowledge that I have signed, by making my mark, the within deed for the expressed purposes; and with the desire to ratify the same I hereunto affix my hand and seal," which instrument she, the said Levisa, in January, 1835, executed by signing and sealing; and after being duly attested she delivered both of the said instruments to the said Shanklin again.
(433) Afterwards the said Levisa Berry filed against Andrew Shanklin her petition for partition, in which she claimed one-fourth part of the said tract of sixty-six acres, and prayed to have it laid off to her in severalty. In that suit the defendant pleaded that the petitioner was not tenant in common with him, but that he was in the actual adverse possession of the whole tract, and had the sole seizin thereof. The Court stayed the proceedings therein until the petitioner could bring an ejectment to establish her right to the possession, and thereupon the present action was brought in May, 1837, upon the several demises of Levisa Berry and Daniel Murray.
On the trial the defendant contended that the plaintiff could not recover on the demise of Murray because the deed to him was void by reason of the adverse possession under the defendant, when that deed was executed. The defendant also contended that the plaintiff could not recover on the demise of Levisa Berry, because her title was divested by her two deeds to the defendant.
There was a verdict for the lessors of the plaintiff, subject to the opinion of the Court on the two points stated, with liberty to set aside that verdict and enter one for the defendant if, in the opinion of the Court, the law was for the defendant on the facts stated. The Court proforma gave judgment for the lessors of the plaintiff, and the defendant appealed.
We think the judgment must be reversed and verdict and judgment entered for the defendant. It is not stated on which count the plaintiff had judgment in the Superior Court, but we do not deem that material here, as, in our opinion, both points raised are in favor of the defendant. *Page 341 
The deed to Murray is null, because it was executed by a person out of possession of the land conveyed. The actual possession, it cannot be denied, was in Shanklin's tenant, and prima facie, therefore, Levisa Berry was not in possession. But it is said that the (434) possession of Shanklin is her possession, because he entered rightfully under her by force of her voidable deed; that the entry and possession must be taken to have been according to the title, and therefore could not become adverse to her, from whom it was derived by such an instrument. It may be true that the character of a possession is often to be judged of according to the title under which it was acquired, as the possession of one tenant in common, though in the sole enjoyment, is the possession of his brethren. But the possession of one tenant in common is not necessarily that of his companions. It may become adverse; and is, in fact and law, rendered so by an actual ouster, or by such other circumstances as show clearly that he denies the right of his companion and holds for himself exclusively. Adverse possession, indeed, is constituted by an actual exclusive possession, taken or held with the intent to put or keep out all others. The title which the party has is not, therefore, decisive of the character of the possession, for frequently that is to be inferred more from the title which the deed under which he claims purports
to convey, than from that which it really does convey; as if one tenant in common, for instance, convey the whole tract and the alienee enter and remain in possession seven years, he acquires title to the whole tract under the statute of limitations, and consequently his possession was adverse to the other tenants in common throughout. Burton v.Murphy, N.C. Term R., 259. A possession taken under a deed in fee made by an infant, although the same be voidable, is not, therefore, to be deemed a possession of or for the infant, but is that of the actual possessor. If it were not so the statute of limitations never could operate when the conveyance was by an infant, because the possession could not be adverse. But, in truth, every vendee in fee takes possession adversely to his vendor as much as to other persons. The possession of one who has a particular estate is subservient to the title of him from whom it is derived and cannot be deemed to have been adverse during the continuance of his estate. But when an owner professes to convey all his estate to his vendee, and the latter enters, he does not hold the possession any more than he does the title for the vendor, from whom (435) he derived both. A sale by an infant, whether his deed be void or voidable as a conveyance, is not an exception to this principle. There is no reason why it should be. The question is, quo animo the vendee took possession, and surely that is clearly evinced by the purport of the conveyance under which the possession was taken. The vendee may not indeed have known of the infancy; but whether he did or not, it is *Page 342 
certain he did not enter for his vendor, but for himself exclusively, and consequently against all the world, including his vendor.
But this case is still stronger against the plaintiff on this point, seeing that the deed, under which the defendant claims, is not from L. Berry alone, but from her and three others, and does not purport to convey their several undivided shares as tenants in common, but to convey the whole jointly. The possession of the defendant taken under this deed was unquestionably adverse to the three other bargainors, and why is it not as against the fourth? Each one conveyed the whole tract, and against each and all of them, therefore, the vendee claimed the whole. A possession taken under such a claim must be deemed adverse.
Hence, we think the deed to Mr. Murray is void. That being so, there was nothing to interfere with the power of the lessor of the plaintiff, L. Berry, to re-deliver her deed to the defendant, if void, or to confirm it if voidable. The state of facts renders it unnecessary to determine whether the deed of bargain and sale of an infant be void or voidable. If void at first it may be delivered a second time, as was here done. Co. Lit., 48; Shep. Touch., 60. It is true that if it be voidable only, a second delivery after full age is ineffectual, because the first had some legal operation, and is therefore irrevocable. But, if it be voidable, it admits of confirmation in some way, and if in any, it must be by the execution of an instrument of equal solemnity with the original instrument. The party after full age, by her deed on the same paper, re-acknowledges the first instrument, and expressly ratifies it. This comes up to the requisition of Lord Ellenborough, in Baylis v. Dineley, 3 Maul and Selw., 482, and must amount to a confirmation, if the instrument admits of a (436) confirmation, as every voidable act or instrument necessarily does. In whatever way it be taken, therefore, the defendant has the title at law.
The judgment must be reversed and the verdict set aside, and a verdict entered for the defendant and a judgment accordingly.
PER CURIAM. Judgment reversed.
Cited: Anders v. Anders, 31 N.C. 218; Pope v. Mathis, 83 N.C. 172. *Page 343